And I will be the first to acknowledge that I do not know of authority, and I do not believe there is any, authority that deals with this precise and fairly unique situation in which a court has refused to enforce an arbitration agreement and yet ordered arbitration in a different form. So I think we are on somewhat new and unusual ground in this, in that sense. But I would submit that in the situation in which a court does in essence refuse to enforce or to compel arbitration pursuant to the party's agreement, the court has in fact denied the petition to compel. And the fact that the court has attempted to send the parties to a different arbitral forum to which they did not agree does not waive the party's right to appeal the denial of its petition to compel enforcement of the party's agreement to arbitrate. Does that open a huge gaping hole with regard to the distinction in the statute between the appealability, interlocutory appealability of an order to arbitrate versus one not to arbitrate? If there is a dispute about where to arbitrate or before whom to arbitrate or whether there is going to be discovery in arbitration or anything, under your view, if you don't get exactly the order you want, you then get to come up to the court of appeals. No. I don't think it opens up a huge hole because we're talking about a very small set of circumstances. In fact, I'm not sure. I do not know of another circumstance like this. Nor, as I said before, do I know of any cases reported or unreported that deal with this issue. So I don't – and we are not talking about a situation in which we're simply saying any time something happens within the arbitration itself that you don't like, you get to appeal. What we're talking about here is proceeding to the court with a petition to compel arbitration based on an arbitration agreement. And the court says no. So your argument is based on the FAA interlocutory appeal provision, as I understand it, and not on the notion that this case was dismissed in this final judgment. No, you're right. That is correct. The order, the amended order, although it certainly resolves everything in the case, does not provide for a dismissal. There is no dismissal. Dr. Armstrong, did – I'm sorry. What it did was it vacated. It vacated all day. But didn't – it doesn't indicate that the district court wanted the case closed or – It does not expressly state that. And to be honest, obviously, it would have made this jurisdictional issue much easier if it had simply gone that next step and simply made it clear that, in fact, the court was – But vacating all the dates is not inconsistent with staying. It is certainly not. It is consistent with a dismissal, in essence, of the case. But it's also consistent with a stay. It's also consistent with a stay as well. And the motion was to compel arbitration request for a stay. Yes. And that is why I think under Green's treaty I can – I am probably foreclosed from making the argument that there is a final order here because there was not a dismissal. So the question is what's the parameters of the interlocutory appeal that's available under the FAA? And what I would submit is, is that in a situation where the court has, in fact, refused to compel, pursuant to the party's agreement, that you are entitled to appeal at that point. This isn't a situation in which, at the end of the day, if we look ahead to what may happen if we had not taken this appeal at this point, I do not believe that we would have any remedy to deal with this, because I think if we went through an arbitration in the improper forum, and presumably, I suppose, if my client – But have an appeal at the end of the case. Why not? Well, because I think at the end of the case I would be coming before this court or another panel of this court and arguing, well, yeah, I got this arbitration. Presumably, I would be appealing because I didn't like the result. I mean, you're saying you might be in a bad position, but technically speaking, you would have an appeal. Technically speaking, I have an appeal. Well, that's – I don't know that I have an appeal, because it seems to me to be the ultimate in forum shopping at that point to have presumably lost or gotten a bad result in this arbitration and then to come to this court and say, well, I want another arbitration with a different forum. I suspect, with all due respect, that I would not get a very favorable hearing at that point, because I would be saying that despite all of the policy behind arbitration to begin with, that there ought to be two arbitrations in this case. This is very different from the situation – Those are all pragmatic reasons. I mean, in fact, you would have an appeal, right? I mean, there are tactical reasons why you might not like it that way, but you would have an appeal. I don't know that I do, because if – Well, you can always appeal. I mean, you have a legitimate appeal. Yes, there would be an appeal. You would have an appeal, and you would have to listen to the argument and the merits and decide whether you were in the right forum or the wrong forum.  I would have the jurisdiction at that, the clear jurisdiction to appeal. And you would have an argument on which to appeal, and you would have to address it on the merits. Now, you're predicting that we might address it differently on the merits once the arbitration is over, but we'd address it on the merits. No. If the court would either at that point address the merits or determine whether or not, in fact, I had waived my ability and my right to make that appeal by proceeding with an arbitration. And the reason I say that, this is different than a situation in which the court orders a party to arbitration and the party claims, well, it really ought to be in district court. At the end of that arbitration, the objective of arbitration is served one way or the other. Either on appeal it is determined it was properly arbitral and it was arbitrated, in which case the objectives of arbitration have been served, or the court decides, no, this should have been in district court, and now we need to have a trial. Okay. So the court decides, no, it shouldn't have been before the NESD. It should have been before the AAA. Go ahead and do it again. Well, I would submit that that, in fact, would contravene the entire policy behind a speedy, efficient, low-cost, effective resolution to arbitration. Let me ask you one other question. Let's just change the focus just a bit. The Second Circuit seems to have addressed this issue in a case called Agustello v. Mitsubishi. Are you familiar with that case? I'm not familiar with that case. Well, then I wouldn't do any good then to pursue it, I guess, with you if you're not familiar. You'd have to read the case. But basically the Second Circuit I think said that in this particular context this is not an appealable order. I'm not familiar with the case, so I'm sorry I can't comment on it. But I don't believe ---- You would agree, though, that if we don't agree with you, that there's probably no jurisdiction. We don't have jurisdiction here. We don't adopt your argument. If the Court does not adopt my argument and decides there's no jurisdiction, then I'm now back into the arbitration  If you're right on the substance of your argument, then you may have the best of two worlds, right? Well, it's not a ---- No. Actually, I think both parties then are actually at the worst of both worlds because both parties are going to go through an arbitration which may have, in fact, no effect, only to then go to another arbitration. The one other thing I would point out is ---- But if you win on the first instance, your opponent is going to be hard-pressed to complain about it, and you're home free. If you lose, then your opponent has to defend their loss. And if he can't, then you get a chance to win again. No. That's precisely why, in the unique posture of this case, where the appellee has now, in effect, stipulated or agreed to go to this alternative forum, that, in essence, only my client has that arguable ability, although that is precisely one of the reasons why I think that if this appeal is not made now, I may be deemed to have waived that right and ability. The other concern I have, just having listened to the argument in the last case, is that I don't want to end up in a situation in which it is then argued that in Jams, they determined that they had jurisdiction, and when I come up on appeal, there's a dispute as to whether or not I have, in fact, consented to that arbitral forum. The arbitrators have made a decision, and now do I really have that ability to appeal? Let me turn, if I may, to the merits, if there are ---- That would only come up if you tried to get the arbitrator to decide whether they had jurisdiction. If you just rested on the court of appeals decision, went forward, and then came back later and said the district court was wrong, they didn't have the ---- they weren't the right forum, you don't have a problem. I mean, I understand it's long and unwieldy and may be inefficient, but that has to do with finality rules. If that is, obviously, if I make this appeal, as I have, and the court disagrees with me and determines it has no jurisdiction, I certainly have some protection from the later argument. I don't disagree with that at all. But I do think it would be ---- it runs counter to the whole intent behind the Federal Arbitration Act to allow ---- Well, the problem was that the intent of the Federal Arbitration Act with regard to interlocutory appeal is sort of dual. It's that certain things get interlocutory appeals and other things don't, and that essentially pro-arbitration rulings don't and anti-arbitration rulings do. I mean, that's really ---- That is correct. That is correct. But the reason for that is because the court is weighing the district court, that is, the non-arbitrability versus arbitrability. And this is not that circumstance. This case is going to arbitration one way or the other based on the combination of what the district court ordered and what the appellee has now agreed and, in essence, sort of stipulated to. So this is not that circumstance in which the court is faced with an issue between arbitration or a district court determination. Let me address the merits, if I might. What we have on the merits of this appeal is a situation in which an individual who is a registered broker with the NASD, with ---- he was a broker with CSFB, he was a member of the NASD, an individual who was required by his employment to be so registered, and an individual who executed, admittedly executed, a U4 form for registration and acknowledges, at least his counsel did in argument in the district court, acknowledges that his intent in executing U4 was to register with the NASD, which is not a surprising admission since he could not perform the job. Why under ---- you were here earlier when we were discussing the jury trial issue. Why isn't this issue properly for a jury? I think, Your Honor, certainly either party could have requested under Section 4 that a jury hear this. But neither party requested a jury, and the court is certainly empowered under Section 4 to determine the issue. I think, quite frankly, the issues, the factual issues are not ones which are really at this point in dispute. You don't contest the district court's findings in that regard, then? Well, the district court didn't really make findings. There is an implied ---- I understood it to make a finding that the NASD box was checked after by somebody at Credit Suisse. That ---- I was going to say that there was an implied finding that that, I think, from the hearing, that that was the basis for the order, that the box was checked after. And assuming that's true for a minute, I don't think that does anything to the case. And let's assume for purposes of this appeal that that's not a clearly erroneous ruling. So the issue becomes, then, is when the appellee executes the form for the purpose of having CSFB file it with the NASD, and the form is in fact filed with the NASD with the box checked, and appellee himself does not claim that he didn't check the box. He just doesn't know. Four years after the fact, I don't think anyone's ever going to know when or how that box was checked. But the point is, is that the checking of that box, given Bushley's desire and intent to register with the NASD, his legal obligation under Federal law, as well as under the rules of the NASD, to in fact be registered, and his submission, execution and submission of that document to CSFB for the purposes of registering, all of that makes the checking of a box by NASD as ministerial as CSFB sending that because Bushley himself did not do that. And for him to have argued that, well, I signed the document and I wanted to be registered with the NASD, but I never thought they would actually send it to them, I mean, that is the level at which he is pursuing in terms of making this argument with respect to the validity of the form. Furthermore, you do not even need the form. Under both California law, in the cases we've cited in our brief, page 33, Craig v. Brown and Root, the DiGiacinto case, both court of appeal cases, the principle being that if you accept a condition of your employment and operate and obtain the benefits of that, that you are in fact going to be deemed to have agreed to an arbitration  agreement. Those cases, notably that line of cases, was approved specifically by the California Supreme Court in the Asmus case, which we have also cited. It's admittedly dicta in that case, but the court went out of its way in that case to say we have to do that. But what are the – exactly how – and this is a little different, of course, because this condition that he arbitrated with the NESD was not as a result of his conditions of employment directly. What evidence do you have that he accepted the NESD arbitration as a condition of employment? The NESD registration was legally required because – It may be legally required, but it could still be not done. I mean – Yes, yes. In which case he couldn't have had the job, which he still did. Yeah, but he did have the job. I mean, people do things that they're supposed to have licenses. They don't have licenses. They're still there. They're still working. I suppose in retrospect it might have been more beneficial if he hadn't been registered. Yeah, but I'm still asking you, you know, that doesn't seem to me to do it. So the fact that he was supposed to be registered, let's assume that he was registered. He was registered. He does not dispute that he was registered. He intended to be registered and was in fact registered. Is there anything in the record about whether he got anything back saying that he was registered? I mean, did he get a membership card or did he get monthly mailings or did he get something that demonstrated to him that he was a member of the NESD? No, but what would have happened if he had not been registered was, of course, he would not have that job. He cannot perform that job, and he would have been terminated. One of the cases we cite in our brief is the Desiderio case, the Second Circuit, dealt with a similar circumstance in which a plaintiff refused to sign, an applicant, an employee refused to sign the U-4 with the arbitration language in it. She signed the document, crossed out the arbitration language. Her employer submitted it to the NESD, and the NESD said, we won't accept this. The employee refused to sign the document again without crossing out the arbitration provision, so she was terminated. So you're making assumptions that he would know all that. Do you have anything else? I mean, I thought there was something in the record where there was a change in the NESD rules and that it was sent to him, something was sent to him demonstrating. What we have is there were two forms, and the form on file with the NESD is, in fact, has the check marked for NESD. But I thought there was a later change in the NESD arbitration rules and something was mailed to him. No. No, what was mailed to him, what you're thinking of there is CSFB's employee, its own internal employee dispute resolution program that the court, the district court, found that he had under the same idea, the same concept, had basically accepted by continuing his employment. That was what was mailed to him. There was nothing that's in the record that was mailed to him proving that he was registered with the NESD. He was registered with the NESD in order to perform his job as a broker, which he could not do that legally if he were not registered. People do things illegally. That's the problem. Yes. Is it completely undisputed that he was only going to be registered with the NESD? It is undisputed that that's the only SRO he was, in fact, registered with, and it's undisputed that since CSFB was a member of the NESD, it was required both by NESD rules and by the SEC, CFR regulations to, in fact, register him as such. And he did not. He has a number of different. Yes. Yes. Yes. And, in fact, he could have been registered with other jurisdictions but was not. And so the NESD is the only SRO, in fact, in which he was registered. But we have no evidence that he knew that. I'm sorry? We have no evidence that he knew that, that he was registered with the NESD or even that he had to be registered with the NESD as opposed to something else. He acknowledges that he was registered with the NESD. He simply contends that he didn't now contend. Where does he acknowledge that? In his declaration. Well, he was registered. He acknowledges that it was registered because you sent it in. Yes. But not that he knew it during a relevant time period. Yes. No, the only thing he does, the only thing he says, takes issue with, is he says now that he did not agree that he was subject to arbitration. He does not deny that he was registered or that he understood he was registered. What I was referring to, and it seems to me it's your strongest argument, you say on page 36 that following a change in the NESD rules concerning the arbitration of statutory discrimination claims, CSSB distributed a memorandum to its employees who were registered with the NESD or U.S. Exchange that blah, blah, blah. Do we know that he got this? Other than knowing, yes. We have evidence from the Millard Declaration, which is tab 5, saying that this was sent out to all employees, but we do not have proof. All employees registered with the NESD. No, to all employees. What? That was sent out to all employees because it describes the scope of CSSB's own, internal dispute resolution program and how that fit, how that meshed with the NESD mandatory arbitration for registered representatives. So that was sent to all U.S. employees, and that's in the Millard Declaration, which is tab 5. Or to assume that he received it? I'm sorry? Or to assume that he received it? That is a legitimate assumption, given the declaration that this was sent out to all employees of CSSB at that time, yes. I think you've exhausted your time. Yes, I have. I believe I have. Thank you. Thank you. Good morning, Your Honors. Please, the Court, Counsel. My name is Tom Duckworth, and I represent Scott Bushley in this matter. Arbitration is fundamentally a creature of contract. No party can be forced to arbitrate unless the party has entered into agreement to do so. Here, the Court found affirmative evidence at the excerpts of Record 240 and 241 that Mr. Bushley did not check any box in Item 10. And if you look at excerpt of the Record, page 137, you'll see that there are 11 spaces where the box can be checked. So there are 11 potential SROs that Mr. Bushley could have been a member of. And so he had to be a member of the NASD for purposes of his employment. Well, he didn't know that at the time. He didn't know that there's no evidence before you that says that Mr. Bushley was aware that CSSB was a member of the NASD. There's no evidence there. In fact, I just reread Mr. Bushley's declaration. He doesn't say that CSSB is a member of the NASD. He agrees that he signed the E-4, and that's all. But this is a very strange document, because it was an application for securities industry registration or transfer, and he checks nothing. So what did he think he was doing? Pardon? It's a uniform application for securities industry registration or transfer. He knew he had to be registered with somebody. I don't know if that's the case. Well, he was applying to be registered with somebody. He checked the box down at the bottom. Nobody speaks to that. Full registration. General securities representative. Right. But he did not check any of the other boxes. So what was this document from his point of view if he was applying to be registered with nobody? Well, in his declaration, he says, I was just handed this E-4, and I was told to sign it as part of a number of other documents in order to get my job. So he didn't make any ñ he didn't consciously think, oh, what am I signing here? He just signed it as one of the many documents that he had to sign in order to have his job. He didn't think he had to be registered with the NASD in order to perform his duties for your client? At the point in time, he didn't know. I mean, there's no evidence to say he did or he didn't. The fact is that he didn't agree to arbitrate before the NASD. He ñ the court said correctly that she found affirmative evidence that he didn't, and a review of the cases demonstrate that the result is proper. I mean, if you look at the cases that defense cite as well as the cases we cite, Baker v. Aubrey signs an E-4, and she registers with the NYSC in Sione v. Foster's Equity. Petition to compel was granted because Sione, I may be butchering his name, registered with the NASD in Item 10. In Mercuro, which is very interesting, Mercuro v. Superior Court, the court did not enforce the E-4 because the employer didn't provide any evidence that they were members of any of the SROs. What about the question of whether he, by working this location for the time period that he did, then became bound to the agreement as a ñ through the EDR? Well, we've already conceded in our papers that he had to go to arbitration through the EDR. Right. But if you look at ñ Do you mean the record about whether he ever became aware that he was registered with the NASD? No. In fact, it says ñ But you can ñ we're told that you conceded that. Did you concede it? No. What I did say is that why was he filing this to be a registered member, not of the NASD? He was just a general registered member, not with any particular SRO. So he does ñ I don't see that in the declaration, Your Honor, that it says ñ That he had no intention of being registered? I don't know. No evidence that he had any intention to be registered? Not in his declaration, which is the only evidence we have. He says ñ Where is the declaration? The declaration is at page 178. 178 through 172. Well, he's signing up. On the U4, he's checked the box, as I said earlier. Full registration, general securities. Right. He knew he had to be registered with somebody or something. Right. But he doesn't ñ Entity. But he doesn't know who, and that's a key material fact in trying to create a contract. You can't ñ I mean, the courts seem pretty clear that you have to be very particular with what you're contracting to. You have to have a mutual assent. Here, there's no mutual assent. I guess you could say here that he just ñ he knew he had to be registered, and he left it to First Swiss to decide who he had to be registered with, and they just then checked the box and mailed it in. That's ñ I guess that's one plausible explanation. I don't know. The court found that ñ But he doesn't say ñ he says in his declaration that he didn't intend to be bound by the arbitration agreement, but that's sort of irrelevant for present purposes. I mean, for present purposes, the question is did he intend to be registered with the NASD or not to be registered with the NASD. And I'm saying it's not in here. Right. The declaration doesn't say either way, and that was the question. So the other cases ñ But I take it ñ I take it to be the situation we're in, that if he'd have checked any other box, he'd have never been registered nor employed. If he would have checked ñ If he'd have checked a box other than the NASD box, he would never have been employed nor registered. I don't know that to be the case. He may have been registered with the NYSC. If he checked a box with the NYSC. But I thought he had to be registered with the association with whom his employer was affiliated, and that was the NASD. That's ñ I believe that's correct. I don't know if that's correct or not. Well, does this man know who his employer was registered with? No. That's one of the things that's not in evidence, is he doesn't know what ñ whose CSFB is registered with. There's no evidence here. Do you want to address the jurisdictional question? Do you want to address the jurisdictional question? Okay. I'm not going to ask you if you want to. You don't have to. But if you want to, you can start doing it. Sure. I think we have jurisdiction. No. I lost, and I'm before you. I mean, I've got the dubious task of defending an order that I ñ that makes me the loser. So, no, I don't believe there's jurisdiction here. I didn't see the Mitsubishi case in the Second Circuit, so. Agustea. Pardon me? It's Agustea versus Mitsubishi. The issue there was whether ñ was that there was a dispute over where the arbitration was to be. The site. My ñ And the court held that that was not interlock ñ subject to an interlocutory appeal. My ñ Similar. My understanding is that they filed a petition to compel, and they won. Now they're saying, well, we wanted to go before the NESC. But throughout their arguments, they say, well, we can go to the EDR. They argue both. And so they won on one of their arguments. And I lost. Well, if that's right, then they do have an appeal because they lost on the other. No, because they lost ñ well, I lost the petition to compel. And they made the petition to compel based on the fact that they had this program, that was offered to the employees. And we lost on that, whether or not that was a viable ñ whether that was a viable contract. So I consider it a loss. Unfortunately, I don't have any other cases on it. So ñ But it's bottom line. They wanted arbitration. They got arbitration. That's how I look at it. With respect ñ But what is your understanding, then, of what happens ultimately to their contention that they got the wrong arbitration? In other words, do they have an appeal later? I'm not willing to concede that. Well, if you're not, you've got a problem. I mean, it seems to me that your position has to be that this is an interlocutory appeal and ñ which has ñ as to which there's certain authority under the FAA. And if it's not within that, then it's ñ then it gets wrapped into the final judgment and they can appeal. I guess what happens is it depends on when they do it. If they go through the entire ñ especially listening to this morning's hearings. If they go ñ Well, if this is the only other time. Either they can do it now or they can do it at the end. Those are the only two options. Or they can do it after the ñ after the initial discussion of arbitrability in jams. It seems to me that there's only two options here. And that ñ I mean, you don't have to stand up and concede it. But the answer is if we don't have an interlocutory appeal, then we have a final appeal. He may have that appeal later. Now, with the EDR program, the EDR defendants have argued that the EDR requires that even if it's not bound to go to the NASD through the U4, Mr. Bushley is required to go through ñ to the NASD through the EDR program. And there is no document that says that's the case. If you look at 5 ER 114, 119, and 125, and 128, they all use language that if the registered representative is required to go to arbitration to one of the SROs, then the CDR doesn't apply to you. Well, the court found that he wasn't required to go to NASD. And therefore, she also found that the EDR did not require Mr. Bushley to go to the NASD. What happened is the court required Mr. Bushley to go to the regular EDR program that was available to all the other employees. And Mr. Early admits to that at 237, 5 through 11, where he says, again, this is Mr. Early. I would like to say that there would be no impact if the EDR still says that if you're not subject to NASD arbitration, then you go through the EDR arbitration program. And if this Court rules that Mr. Bushley is not subject to NASD arbitration because this box wasn't checked, then he would be subject to arbitration under the program. So because the judge ruled that, district court ruled that Mr. Bushley did not intend to arbitrate before the NASD, the EDR box. I have no further. Anything else? No, I have nothing further. But the requirement that he arbitrate, you say does not go so far as to require that he arbitrate before the NASD. Okay. But it says if he is required, and could it be that his membership requires? Well, then you're asking, is he forced to arbitrate as an operation of law? I don't think there are any cases that say that you can arbitrate as an operation of law. There has to be an agreement. No, I'm not saying that. He's a member, right? Yes. Well, wait a minute. That's really the question. He may be a member. Did he know he was a member? There is nothing in the evidence that suggests he knew. But he was a member. In fact, he was because this thing was sent in and he was a member. Right. Okay. And there's no evidence that he ever represented himself as a member? Not that's before the court. Okay. Any further questions? No. Thank you, counsel. Thank you. Thank you. The matter will stand submitted. If I can, back to this case. All right. I'm sorry. I tried to quote something that you said in your argument to counsel, and apparently there's some conflict. And if you'll just take a half a minute to straighten me out on that. What I was referring to was the statement by Mr. Duckworth to the district court. The statement is not in Mr. Bushley's declaration. Okay. It's at 15 ER 227 where Mr. Duckworth says he, that is Mr. Bushley, was agreeing to be a registered securities dealer, broker, but not necessarily agreeing to arbitrate in front of the NASD. Sorry. The concession was made with respect to that. All right. So it's counsel's words instead of the. But also, as you just read it, it said he agreed to be a registered representative but not necessarily with the NASD. No. I should say not necessarily arbitrating. But he didn't say with the NASD either. No. No. Those words are not in there. All right. The only other thing, the Augustia case, I am familiar with the case now that you described it the way you did, and I just respectfully submit that the argument over the situs of an arbitration is a very different issue from the issue of the. But that's the line drawing problem, right? That brings up the line drawing problem that I began with. What's the difference? And where do we cut it? I think there's a very clear line between the issue that was just being argued, for instance, in the prior case about arbitrability and the ability of a particular forum to decide. There's a very big distinction I think that can easily be drawn between this is the forum which the parties agreed to, that is the actual arbitration rule and agreement that is being enforced versus I'm sending you off to this thing and you never agreed to this. But I'm going to make you go through that arbitration, and you have to do that, and then, only then, after the fact, appeal. And that is a very different issue, and it's a very bright line test, and I don't think that drawing that bright line will be anything but a bright line between the proper forum which the parties have actually agreed to. Thank you. Let's take a recess. Yeah, let's take a break. Court will take a ten-minute recess. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Leavy, Paez, Berzon